## PERMELIA BROOM ET AL. v. JOHN PEARSON.

### No. 1396. Decided March 9, 1905.

**1.—Limitation—Possession—Married Woman.**

Evidence that one purchasing land in 1855 entered into possession "a short time after he bought it and before the war," seems to be too indefinite to show that limitation began to run in his favor against the adverse claim of a woman who married in 1860. (P. 474.)

**2.—Limitation—Constructive Possession—Deeds.**

When one holding under separate deeds conveying respectively the east half and the west half of a survey of land entered into possession and improved a part of the east half, his constructive possession extended to the limits of his deed to the east half, but not to the entire survey, though his grantee succeeding to the same possession under a deed conveying the entire survey held by construction to the limits of such later deed, that is the whole survey. (P. 474.)

**3.—Adverse Possession—Cutting Timber.**

Mere cutting of timber upon land, though extensive, appears not to constitute adverse possession. (P. 474.)

**4.—Administration—Guardianship.**

Though debts against a decedent, in the absence of administration on his estate, might have been satisfied in guardianship proceedings out of the inheritance, the sale by guardian of the interest of one of the heirs in property held in common with other heirs, can not affect the title of such other heirs on the ground that there were debts chargeable against the whole property. (Pp. 474, 475.)

**5.—Partition—Guardian's Sale.**

A guardian's sale of a specific portion of lands held by the ward in in common with others could not divest the interest of such cotenants who had done nothing which could be regarded as acquiescence in such proceeding as effecting a partition. (P. 475.)

**6.—Sale by Cotenant—Equities.**

The equities arising between successive purchasers of specific tracts of land from one holding same as tenant in common with other parties apply only between such purchasers and do not affect the titles of their grantor's cotenants who were not concerned in the sale. (P. 475.)

### ON MOTION FOR REHEARING.

**7.—Appeal—Rendering Judgment—Remand.**

On reversing and remanding for error in proceedings by which defendant had judgment in a suit for recovery and partition of land by cotenants, the court here orders a retrial on such issues as may be made between the parties, instead of directing entry of such judgment as was warranted by the former special findings settling a portion of the issues then made. (P. 476.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Rusk County.

Broom and others sued Pearson for the recovery of land. Defendants had judgment which was affirmed on appeal by plaintiffs, who thereupon procured writ of error from the Supreme Court.

*J. H. Turner,* for plaintiffs in error.—As the half brother and sisters of J. D. Hamilton, plaintiffs inherited upon his death one-half each as much of his estate as his whole sister, Mary L. Hamilton, the sale by her guardian of all her "right, title and interest" in said land would not divest the legal title of plaintiffs. Kelsey v. Trisler, 32 Texas Civ. App., 177; House v. Brent, 69 Texas, 27.

Plaintiffs at the time of said guardianship, being minors, the oldest 10 years and youngest 4 years, and not being parties to said proceedings, and not having received any part of the property of said J. D. Hamilton, are not bound by same. Brent v. House, 69 Texas, 27; Lockridge v. Corbett, 31 Texas Civ. App., 676; Johns v. Northcutt, 49 Texas, 456; Kelsey v. Trisler, 32 Texas Civ. App., 177.

The probate court had no jurisdiction of plaintiffs' interest in the estate of J. D. Hamilton to partition the same. "No presumption will be indulged in support of the jurisdiction or regularity of the proceeding when the record repels such presumption." Bradley v. Love, 60 Texas, 475. There could be no partition of J. D.'s estate in this guardianship proceeding of Mary's estate. Arnold v. Hodge, 20 Texas Civ. App., 211; League v. Henecke, 26 S. W. Rep., 731; Ryan v. Maxey, 43 Texas, 193; Stafford v. Harris, 82 Texas, 183; Templeton v. Land and Cattle Co., 77 Texas, 57; McDougal v. Bradford, 80 Texas, 566. Plaintiffs not being parties to said proceedings are not bound by them. John v. Northcutt, 49 Texas, 456; Good v. Coombs, 28 Texas, 51.

There can be no acquiescence and ratification such as will bind or estop parties without a knowledge of the facts, and not then unless the party to be affected has been injured by the acts or conduct of the party sought to be bound by same. Wells v. Houston, 29 Texas Civ. App., 619; Waggoner v. Dodson, 7 Texas Ct. Rep., 136; Stegall v. Huff, 54 Texas, 197; Short v. Short, 12 Texas Civ. App., 89.

The judgment of the court should be based on the verdict of the jury and in the absence of sufficient facts to support the same the court should grant a new trial. Claiborne v. Tanner, 18 Texas, 79.

Failure to assert ownership will not defeat right in absence of adverse possession. There could be no acquiescence in absence of knowledge. Murphy v. Welder, 58 Texas, 241; Templeton v. Land and Cattle Co., 77 Texas, 57.

The court erred in its judgment for defendant, because the findings of the jury show that no limitation had run against plaintiffs as to this land, there never having been any actual possession of same such as would be a bar to plaintiff's rights and their legal title being undisputed. Murphy v. Welder, 58 Texas, 241.

The finding of the jury that defendant and his predecessors had been in possession of the land since the first purchase is entirely unsupported by the testimony and contradicts the finding wherein it is found that no improvements had been made on same until 1876. Sellman v. Hardin, 58 Texas, 86; Fuentes v. McDonald, 85 Texas, 136; Vineyard

v. Brundrett, 17 Texas Civ. App., 147; Parker v. Baines, 65 Texas, 609; Word v. Box, 66 Texas, 602.

Purchaser from part of the heirs can not be innocent purchaser. Ross v. Morrow, 85 Texas, 172; New York Land Co. v. Hyland, 8 Texas Civ. App., 604.

Defendant was told before he bought that he had better investigate the title. It was community property of Caroline and Francis Hamilton. Waggoner v. Dodson, 7 Texas Ct. Rep., 135; Hunter v. Eastham, 95 Texas, 652-3. Can not be innocent purchaser of equitable title. National Oil & P. L. Co. v. Teel, 95 Texas, 592.

The judgment of the court is without evidence to support it, the testimony clearly showing without contradiction that plaintiffs as heirs of their half brother are entitled to part of the land in suit, the same having belonged to him at his death and no valid sale of their interest in same having ever been made, and plaintiffs being without knowledge of their interest therein until 1902, and no adverse possession thereof ever having been taken until just before the bringing of this suit. Johns v. Northcutt, 49 Texas, 456. No equity springs in favor of purchasers against plaintiffs. Rutherford v. Stamper, 60 Texas, 449.

One tenant in common can not sell any designated part of the common estate to the prejudice of his cotenant and equity will not prefer such purchaser to such co-owner in the absence of evidence showing that his interest may be satisfied from other joint property which is unincumbered. Arnold v. Cauble, 49 Texas, 527; Saunders v. Silvey, 55 Texas, 46; Good v. Combs, 28 Texas, 51; Rutherford v. Stamper, 60 Texas, 449; Dorn v. Dunham, 24 Texas, 366; McKey v. Welch, 22 Texas, 396; Mast v. Tibbles, 60 Texas, 306; Talkin v. Anderson, 19 S. W. Rep., 354.

*S. J. Hendrick, John R. Arnold,* and *W. C. Buford,* for defendant in error.—The probate court having general jurisdiction over the estate of minors, had the authority to say what part of the minor Mary L. Hamilton's estate should be sold, and acting on the will of her mother, Caroline Davis, and with all the facts before said probate court at the time in reference to Mary L's. interest in the whole tract from which this land was sold, her guardian being the father of plaintiffs, and the court through the guardian having taken possession of the west half of the Hamilton survey, the land in suit, for the use of the minor Mary L. and ordered it sold for her benefit, this as a complete segregation of the tenancy between Mary L. and plaintiffs, and worked a partition of this tract, as land of greater amount and value was left remaining to satisfy plaintiffs rights—if any they had. Lee v. Smith, 18 Texas, 146; Lemonds v. Stratton, 5 Texas Civ. App., 407. Cameron's purchase under the guardian's sale, being the first, will have precedence over subsequent sales. Arnold v. Cauble, 49 Texas, 534; Camoron v.

Thurmond, 56 Texas, 33. Purchasers under an order of the probate court need not look beyond such order or inquire as to its regularity, or whether facts exist supporting such order, when the sale is made to them and confirmed by the court. Kendrick v. Wheeler, 85 Texas, 253; Lyne v. Sanford, 82 Texas, 63; Reems v. Masterson, 80 Texas, 53; Robertson v. Johnson, 57 Texas, 63.

The court was warranted in its conclusion of the law and facts that the sale by the guardian of Mary L. Hamilton passed the title to Cameron and his vendees, and that there was a partition of the estate, and that plaintiff acquiesced in the sale of this land by the probate court, and this verdict should not be disturbed, as the will of Caroline Davis recorded in county clerk's office for more than forty years, followed and acted on as a will, is now binding. Portis v. Cummings, 14 Texas, 171; Giddings v. Steele, 28 Texas, 752. And is a color of title, even when known to be invalid. Charle v. Safford, 13 Texas, 113. Lapse of time and acts and acquiescence of parties will raise the presumption of partition. Wardlow v. Miller, 69 Texas, 399; Mitchell v. Allen, 69 Texas, 73; Gresham v. Chambers, 80 Texas, 549. And this is true where the parties did not themselves participate in such partition. Lemonds v. Stratton, 5 Texas Civ. App., 407.

The defendant and those under whom he claims, having had and held peaceable possession of the land in suit for over forty-seven years, under deeds duly recorded, and having paid taxes on it for the past forty-seven years, and having used and occupied it for such purposes as needed for all these years, with general notoriety of his possession and claim, he can not be disturbed now, especially when plaintiffs failed to show any equity in their claim.

The evidence supports and warrants the finding of the jury that J. D. Hamilton estate was responsible for part of the debts for which the land in suit was sold; and that plaintiffs had received other property of their mother's and part of J. D. and Mary L. Hamilton estate. It was not necessary to administer on J. D. Hamilton estate to sell his property to pay debts with which it was chargeable. Berry v. Young, 15 Texas, 369; Veal v. Fortson, 57 Texas, 484.

The court was warranted in its conclusions of law and fact, that the land in suit could be set apart to defendant without injury to plaintiff's rights.

WILLIAMS, Associate Justice.—The plaintiffs in error brought this action to recover of the defendant 200 acres of land which is a part of the west half of the Francis Hamilton survey of 600 acres in Rusk County, or such portion thereof as the evidence might show them entitled to. Judgment upon a special verdict was rendered for the defendant in the District Court and was affirmed in the Court of Civil Appeals, the latter court holding that the undisputed evidence showed that such title as the plaintiffs had once had to the land was

barred by limitation.  The facts are as follows: The parties agreed that Francis Hamilton was their common source of title.  A certificate for 1280 acres was issued to Francis Hamilton and was located partly upon the 600-acre tract in Rusk County and partly upon 680 acres in Cooke County.  Hamilton died in 1838, leaving a widow, Caroline, and two children, James D. and Mary L.  Caroline subsequently married W. C. Davis, to whom she bore four children and died July 15, 1852, leaving surviving her her husband and her six children, and leaving a will which was never probated, but was authenticated by one of the subscribing witnesses and recorded as in the case of a deed. This will has, it seems, been recognized and acted on as valid by all parties concerned as if fully established.  By it she undertook to devise to James D. and Mary L. Hamilton, in equal portions, the 600 acres of land of which the 200 acres in controversy is a part.  James D. Hamilton died, without issue, in 1853, leaving as his heirs his full sister Mary L. Hamilton, his half sisters, Permelia and Elizabeth Davis, and his half brothers, James and Thomas Davis.  Permelia was born about 1841, married her present husband, Broom, in July, 1860.  James was born in 1843 and died without issue in 1863.  Elizabeth was born in 1846, married Compton in October, 1865, and died in 1898, leaving children as her heirs.  Thomas was born in 1848 and was living at the institution of this suit.  Mrs. Broom, the children of Mrs. Compton, and Thomas Davis are the plaintiffs, claiming interests inherited from their half brother, James D. Hamilton, immediately, as well as through their deceased brother James Davis.  The defendant claims under Mary L. Hamilton as follows: Deed from W. C. Davis, her guardian, to J. H. Cameron under sale regularly made and confirmed by the probate court of Rusk County in 1855, recorded September 28, 1860, describing the land conveyed by metes and bounds and also as the west half of the Francis Hamilton survey of 600 acres.  Deed from Mary L. Hunter, nee Hamilton, and her husband to J. H. Cameron of date January 16, 1858, recorded same day, describing land conveyed as the east half of the Francis Hamilton survey and also by metes and bounds.  Deed from J. H. Cameron and wife to J. M. Cameron, dated February 3, 1866, recorded February 12, 1866, conveying the whole of the Francis Hamilton survey by metes and bounds.  Deed from J. M. Cameron and wife to A. F. Lacey for the 200 acres in controversy, dated March 26, 1887, and recorded March 28, 1887.  From Lacey the defendant Pearson deraigns his title to the 200 acres by regular chain of conveyances, the last of which to himself is dated February, 1900.  From this statement it is seen that plaintiffs have undivided interests in the whole of the Hamilton land which they inherited from their deceased brothers, unless they have lost them by limitation, or in some other way.  As Mrs. Broom married in 1860 and is still a married woman, and as Mrs. Compton married in 1865 and lived until 1898, limitation can only be established against them

by showing either that the statute commenced to run against them before their respective marriages, or that the bar has operated since the passage of the recent statute abolishing the disability of coverture. Upon the first contention the evidence shows that J. H. Cameron cleared a field on the east half of the Hamilton survey "a short time after he bought it and before the war." It is not shown that the possession thus taken was maintained continuously until J. H. Cameron conveyed to J. M. Cameron in February, 1866. Furthermore, as to Mrs. Broom, who married in July, 1860, this evidence is probably too indefinite to show a possession taken before her marriage. But, waiving these objections, the possession of the east half held as a distinct tract under one deed describing it alone can not be extended by construction to the boundaries of another and separate tract held under another deed. The deed under which the tract possessed was held must determine, by the boundaries therein given, the extent of the constructive possession, for it is under that deed the entry was made and to it other parties had the right to look in determining the extent of the claim asserted by the possession. The authorities upon the subject will be found cited in 1 Cyc. of Law and Proc., 1128. Besides this clearing, the evidence shows only that J. H. Cameron cut some timber occasionally from the other tract, but it is clear that this can not be held to have constituted a possession. When J. H. Cameron conveyed to J. M. Cameron in 1866 the whole of the Hamilton survey as one tract, the latter at once entered upon the east half and kept up an actual possession and use thereof until he sold out in 1884 and he moved away. This possession undoubtedly extended to the whole original survey, as its boundaries were called for in the deed under which it was held. Besides the evidence shows an actual possession upon the west half taken and held by J. M. Cameron which was probably sufficient to bar the claim of any one against whom limitation ran. But as Mrs. Broom and Mrs. Compton were covert when this possession was taken it was ineffectual against them. As we have stated, J. M. Cameron sold his home upon the east half in 1884 and moved away. The other possession on the west half came to an end about the same time. The 200 acres in controversy became severed from the remainder of the Hamilton survey by the conveyance to Lacey in 1887 when no limitation had taken effect against Mrs. Broom and Mrs. Compton, and there has not since that time been any such use of the land by the subsequent owners as amounted to a possession. The evidence shows merely a rather extensive cutting of timber and nothing else, until defendant himself took possession within five years before this suit was begun. The possession of J. M. Cameron was sufficient to bar the claim of Thomas Davis, but not those of the other plaintiffs.

There are some other contentions of defendant in error which will be briefly disposed of. The first is that the sale by the guardian of Mary L. Hamilton passed also the title of the heirs of J. D. Hamilton

because there were debts chargeable upon the whole property. If Mary L. Hamilton had been the only heir of James D. Hamilton, the authorities relied on would give countenance to the contention that an administration on his estate would have been unnecessary and that the debts could have been satisfied in the guardianship proceeding. Berry v. Young, 15 Texas, 369; Veal v. Fortson, 57 Texas, 485. But certainly it can not be held that the guardian of a minor can sell the interests of other persons in property merely because it is held in common with the minor and the interests of all are chargeable with common debts. It is by no means clear that there were any such debts, and it is clear that the probate court authorized and the guardian made only a sale of the ward's title.

It is next contended that the guardianship sale, in view of the great lapse of time since it took place, and the apparent acquiescence of plaintiffs therein should be regarded as having, effected a partition of the 600 acres, setting apart the west half as the share of Mary L. Hamilton. By its own vigor, the probate proceedings can have no such effect, both because the probate court did nothing towards a partition and because it could not, by a mere sale of the ward's title, divest or affect the interests of other persons. The plaintiffs have done nothing which can be regarded as a partition. On the contrary it appears that not only the whole of the 600 acres but the unlocated balance of the certificate and their proceeds were appropriated by Mrs. Hamilton, and plaintiffs received nothing whatever from the estate of their deceased brother. We are unable to see how this state of facts can be regarded as showing a partition.

The defendant in error invokes the doctrine intimated by Judge Roberts in Arnold v. Cauble, 49 Texas, 533, as to the rights, inter sese, of successive purchasers from one tenant in common of specific parcels of the land owned in common with others, when, in setting apart to the other cotenants their interests, it becomes necessary to take from such purchasers their specific parcels, and contends that by his first purchase J. H. Cameron acquired the right to have plaintiffs satisfied out of the remainder of the tract, and that, in some way, this right should be employed for the defendant's protection. Aside from the fact that Cameron bought both parcels and other answers that might perhaps be given, the doctrine referred to only recognizes an equity as between the purchasers themselves and does not affect the titles of the cotenants not concerned in the sale. As to them the well settled rule is that they are not to be prejudiced by conveyances made by their cotenants to specific parcels and that their titles remain unaffected thereby, the conevyances passing only such interest in the parcels conveyed as the cotenants could convey.

The parties having agreed that Francis Hamilton was the common source, it follows that upon his death J. D. Hamilton inherited one-half of the land, subject to the widow's one-third life estate which is long

since determined, and that upon his death this descended to his brothers and sisters as prescribed by the statute. The judgments of the Court of Civil Appeals and of the District Court will be affirmed as to Thomas Davis, but as to the other plaintiffs will be reversed and the cause remanded to the District Court with instructions to render judgment for such other plaintiffs for such portions of the one-half undivided interest of J. D. Hamilton as they inherited from him and from their other brother James Davis, and such further judgment upon the respective claims for rents, damages, improvements and upon defendant's action over against his warrantors as the law and the facts may make proper.

*Affirmed in part; reversed and remanded in part.*

### ON MOTION FOR REHEARING.

We see no reason to change or modify the opinion heretofore filed upon the questions of law therein discussed, but have concluded that it is best to remand the cause without instructions, so that it may be tried on such evidence as the parties may be able to adduce in support of their respective claims.

The motion for rehearing contends that there was evidence tending to show that by transactions among the Hamilton and Davis children the latter took interests in property left by their mother at her death which would otherwise have belonged to Mary Hunter, nee Hamilton, in compensation for their interests in the property left by James D. Hamilton appropriated to her use, and that thus a division was effected. The findings of the jury are inconsistent with this contention, and if there is any evidence tending to substantiate it, which we need not determine, it certainly is not of that conclusive character which would justify this court in holding, as matter of law, that plaintiffs have thus parted with the interest in the land inherited from their half brother, and affirming on that ground a judgment otherwise erroneous.

The motion also calls attention to the fact that defendant and his grantors have paid all taxes on the land and claims that, if plaintiffs should recover, as cotenants with him, they should be charged with their portion thereof. This claim would not have been precluded under our original opinion, but could have been determined in partition. These reasons, however, are sufficient to justify the modification of the original opinion in such manner as to allow a new trial upon such issues as may be made between Mrs. Broom and Mrs. Compton, plaintiffs, and the defendant. With this, the motion is overruled.

Opinion delivered April 20, 1905.